UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARGIE M. WATKINS, | ) | |
| (Social Security No. XXX-XX-3250), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:09-cv-149-WGH-RLY |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 10) and an Order of Reference entered by Chief Judge Richard L. Young on January 20, 2010 (Docket No. 12).

**I. Statement of the Case**

Plaintiff, Margie Watkins, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f). This court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff filed for DIB on June 11, 2006 (R. 101-06) and SSI on June 13, 2006 (R. 107-110) alleging disability since February 2, 2006. The agency denied

Plaintiff's applications both initially and on reconsideration. (R. 82-89, 91-96). Plaintiff appeared and testified at a hearing before Administrative Law Judge Patrick Kimberlin ("ALJ") on August 19, 2008. (R. 35-77). Plaintiff was represented by an attorney; also testifying was a vocational expert and Plaintiff's friend, Deborah Spicer. (R. 35). On September 25, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 15-26). After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-3). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on November 16, 2009, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Plaintiff was 35 years old at the time of the ALJ's decision and had a GED (R. 24). Her past relevant work experience included work as a restaurant worker and CNA, which was heavy work. (R. 24).

### B. Medical Evidence

#### 1. Plaintiff's Mental Impairments

On December 28, 2005, Plaintiff saw Thomas Sehlinger, M.D., for complaints of knee pain; she had previously been involved in a motor vehicle accident and the pain was located at the "tibial nail insertion site." (R. 274-75).

The pain was associated with activity, especially going up and down stairs. (R. 274). Dr. Sehlinger observed that Plaintiff was mildly obese and in no acute distress; her right knee had crepitus (grating, crackling or popping sounds) and mild effusion, but she had no significant limp. (R. 274). He noted past MRI results (R. 279) which revealed degenerative changes in the patellofemoral joint and medial condyle, and Grade II change in the meniscus. (R. 275). Dr. Sehlinger assessed Plaintiff with arthritic knee pain and recommended a cortisone injection. (R. 275).

On December 30, 2005, Plaintiff saw John Guarnaschelli, M.D., for complaints of neck, shoulder, and right arm pain; she also complained of headaches. (R. 183-84). An MRI showed a minimal right central and paracentral herniation at C5-6 with multi-level spondylosis. (R. 183, 286). However, Plaintiff's physical examination and nerve conduction studies were normal. (R. 184-85).

On February 16, 2006, Plaintiff saw Dr. D. Sivamohan for complaints of stomach cramping, nausea, and migraines. (R. 194). On March 13, 2006, he completed a statement of medical condition in conjunction with Plaintiff's application for food stamps in which he indicated that Plaintiff's primary problem was a herniated disc in her cervical spine. (R. 201). Dr. Sivamohan listed scoliosis and headaches as secondary problems. (R. 201). Dr. Sivamohan indicated that Plaintiff was unable to sit, stand, walk, lift, or grasp for more than 20 minutes at a time. (R. 201). He indicated that Plaintiff was able to work 20-25 hours per week. (R. 201). Plaintiff's prognosis was listed as "fair." (R. 201).

-3-

On April 24, 2006, Plaintiff saw Erica Rodgers, RN, FNP-c, of St. Luke's Medical Ministry, for complaints of painful and limited range of motion in her back. (R. 272). Plaintiff also reported that her GERD was well-controlled. (R. 272). On May 22, 2006, Plaintiff told Rodgers she had increased migraines and numbness in her arms and legs; it was noted that Plaintiff also had chronic back pain due to a bulging disc. (R. 270).

On May 30, 2006, Plaintiff started chiropractic treatment with Scott Craig, D.O., from Health Centered Chiropractic. (R. 217-23). Plaintiff complained of two herniated discs and migraine headaches three times a week. (R. 217). Dr. Craig recommended therapeutic exercises, massage, and a physical therapy consultation. (R. 219-20). Plaintiff saw Dr. Craig every day or two through June 9, 2006, and generally reported pain in her neck, back, and shoulders between four and six on a scale of one to ten. (R. 210-23).[1]

On June 13, 2006, Plaintiff underwent an initial pain clinic evaluation with Kimberly Kost, NP, at the Pain Management Center. (R. 241-44). Plaintiff reported that she experienced pain primarily in her neck, shoulders, right arm and hand, and mid-to-lower back. (R. 241). She described her pain as constant and burning, shooting, throbbing, stabbing, and stinging; she rated it as an eight on a scale of one to ten. (R. 241). Plaintiff also indicated that her past medical history included migraines three to four times a week and GERD. (R. 242, 246). She claimed that she needed assistance to help prepare meals and

---

[1] Plaintiff continued to received chiropractic treatments from Dr. Craig through April 2008. (R. 366-91).

-4-

do grocery shopping, but that she could perform all other activities of daily living herself. (R. 242). Plaintiff reported no regular exercise program. (R. 242). Kost noted that Plaintiff's cervical MRI showed a minimal midline and right disc protrusion at C5-6. (R. 241). On examination, Kost noted that Plaintiff was in no apparent distress, her strength was normal, her reflexes were normal, and her sensation was "essentially normal." (R. 243). Kost indicated that Plaintiff would undergo three knee injections as well as a cervical epidural injection. (R. 244).

Plaintiff reported that she received cervical epidural injections in June and July 2006. (R. 236-37). Plaintiff reported that her pain medications relieved her pain 70 percent. (R. 236). Cortisone injections in her right knee were unsuccessful. (R. 236).

On July 18, 2006, nurse practitioner Rodgers wrote a letter to the state agency in which she indicated that Plaintiff had been her patient since December 2005, and that she had last seen Plaintiff in May 2006. (R. 267). Rodgers indicated that, to her knowledge, Plaintiff had "been able to complete her job tasks to the satisfaction of her employer." (R. 267). Rodgers noted that Plaintiff reported pain with respect to lifting, pulling, carrying, or handling heavy objects; but did not report pain in regards to sitting, standing, or walking. (R. 267).

On August 15, 2006, Plaintiff underwent a consultative examination with Richard Gardner, M.D. (R. 224-26). Plaintiff reported back pain in her cervical, thoracic, and lumbar regions. (R. 224). She reported quitting work six months earlier due to back pain. She claimed that walking 20 minutes caused low back

pain. (R. 224). Plaintiff did not complain of migraine syndrome or acid reflux. (R. 224). On examination, Plaintiff was able to get on and off the examination table without help, she had a full cervical range of motion, a minor decrease in her lumbar range of motion, she was able to walk normally, her strength and reflexes were normal, and she could stand and squat without problem. (R. 225). Dr. Gardner assessed Plaintiff with chronic cervical and lumbar pain without radiculopathy. (R. 226).

On October 4, 2006, Plaintiff saw nurse practitioner Rodgers for follow-up regarding fatigue and GERD. (R. 265). Plaintiff reported that she was "doing, feeling better" and that she was starting "MedTech" school. (R. 265). On October 25, 2006, Rodgers addressed a letter to the state agency in which she stated that Plaintiff "has no medical impairment to gainful employment as there has been no physical or mental disability observed." (R. 264).

In March 2007, Plaintiff saw David Laitinen, M.D., for an evaluation of her right knee. (R. 289-90). Examination revealed a normal range of motion with marked crepitus, and normal sensation and reflexes. (R. 290). Dr. Laitinen reviewed x-rays of her knee, noting only minimal joint space narrowing. He recommended strengthening exercises and anti-inflammatory medication. (R. 290). He also indicated no past history of GERD. (R. 290).

On February 19, 2008, Plaintiff returned to Dr. Guarnaschelli with complaints of intermittent back and neck pain and intermittent numbness. (R. 301-02). Dr. Guarnaschelli noted that a January 2008 MRI (R. 364) showed evidence of cervical spondylosis at C5-6, but no evidence of herniation. (R. 301).

A physical examination was normal, and Dr. Guarnaschelli recommended physical therapy. (R. 302).

On May 16, 2008, Plaintiff underwent a pain clinic evaluation with Mayra Bonet, M.D., at Schneck Medical Center. (R. 309-11). Plaintiff reported pain in her upper back and neck which was aggravated by walking, standing, or sitting for more than 20-30 minutes at a time. (R. 309). She indicated that massages and medications helped. (R. 309). She also indicated that the epidural cervical injection "helped very much." (R. 309). On examination, Plaintiff exhibited tenderness in her trapezius muscles with multiples tender points, but a normal range of motion in her neck and shoulders. (R. 310). Dr. Bonet assessed Plaintiff with myofascial pain syndrome and cervical pain secondary to degenerative disc disease and referred her for physical therapy and a TENS unit. (R. 311).

### 2. State Agency Review

On August 21, 2006, state agency reviewing physician B. Whitley, M.D., completed a Physical Residual Functional Capacity Assessment. (R. 228-35). He opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. (R. 229). Plaintiff could stand and/or walk and sit for six hours in an eight-hour workday. (R. 229). She had no postural or manipulative limitations. (R. 230-31). In October 2006, state agency reviewing physician M. Ruiz, M.D., affirmed Dr. Whitley's assessment as written. (R. 263).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in

order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, and that Plaintiff was insured for DIB through September 30, 2012. (R. 20). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had four impairments that are classified as severe: cervical degenerative disc disease; degenerative joint disease of the right knee; myofascial pain syndrome; and obesity. (R. 20). The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). The ALJ determined that Plaintiff's testimony was not fully credible. (R. 23). The ALJ then found that Plaintiff retained the following RFC: the full range of sedentary work. (R. 22). The ALJ determined that, based on this RFC, Plaintiff could not

perform her past work, but she could still perform a full range of sedentary work. (R. 24-25). The ALJ, therefore, concluded that Plaintiff was not under a disability. (R. 25).

### VI. Issues

Plaintiff has raised three issue. The issues are as follows:

1. Whether the ALJ's credibility determination was patently wrong.

2. Whether the ALJ failed to properly account for acid reflux and headaches.

3. Whether the ALJ's assessment of Plaintiff's RFC was proper.

**Issue 1:** **Whether the ALJ's credibility determination was patently wrong.**

Plaintiff first argues that the ALJ conducted a flawed credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The

finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

-11-

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(I)-(vii).

The ALJ's assessment of Plaintiff's credibility can be found at R. 22-23 and was as follows:

> The claimant testified that she has severe pain in her back and her right knee. She was originally injured in a car accident in 1995 and she had three surgeries on her leg. She returned to work but aggravated both conditions by working. She rated her pain as an "8" or "9" on a scale of "1" to "10." She takes prescription pain medications and while they help somewhat they make her feel drowsy and nauseated. She has occasional breakthrough pain which require her to lay down on the couch and put heat pads on her leg to ease the pain. She stated that she lays down about 40-50% of the day. She has also attended two pain clinic [sic] and participated in physical therapy. She has migraine headaches 2-3 times a week which require her to lay down in a dark and quiet room. The claimant stated that she can be up and on her feet about

20-30 minutes or sit for 20-40 minutes before experiencing back pain. She can lift or carry 15-20 pounds at one time but lift only 5-10 pounds over several hours. It is difficult to reach overhead or bend over, and her children help with chores around the house. A friend of the claimant, Deborah Spicer, also appeared and testified that she helps the claimant clean and she has given her rides at times from her part-time work and observed her to be in severe pain. She stated that the claimant's condition has worsened over time.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. The claimant has received only conservative treatment, primarily by a nurse practitioner. She reports severe pain and limited ability to bend or squat but she was able to squat during a prior consultative physical examination (Exhibit 6F). The rest of her exam was clinically within normal limits and, notably, she exhibited full range of motion of the neck. While treated for neck pain and found to have cervical disk protrusion, this condition was described as minimal and a recent MRI showed no sign of herniation (Exhibits 12F, 15F). Other past testing, including ANA and RA testing and nerve conduction testing was all negative (Exhibits 1F, 15F). The claimant engaged in significant work activity despite her longstanding knee impairment and she remains fully ambulatory. Repeat examination has revealed crepitus but adequate range of motion of the knee and knee joint stability (Exhibits 6F, 11F, 12F, 13F, 16F). The claimant has had pain management treatment for her complaints of neck, back and shoulder pain but the relevant treatment notes also reflect that she has generally reported significant benefit from pain medications and injections (Exhibits 8F, 16F, 19F). As noted above, her headaches and stomach pain complaints are not well corroborated by the medical record. Also, she did not report either problem to the consultative examiner (Exhibit 6F). She has been able to perform significant part-time work, including consistent work as a certified nurse assistant in both 2006 and 2007 (Exhibit 11E). The claimant remains the primary caregiver for her two children and she is able to drive 3-4 times a week, shop, and perform some household chores such as dusting. The claimant appeared in no outward distress during the hearing and she responded appropriately to questions with no indication of distraction due to

pain or any other cause even though she rated her pain as an "8" on a scale of "1" to "10."

(R. 22-23). While the ALJ may have not made a perfect analysis of the seven factors listed in 20 C.F.R. § 404.1529, his decision was not patently wrong. The ALJ looked at the objective medical evidence as well as several other factors and reasonably concluded that Plaintiff's complaints of pain were not fully credible. The ALJ specifically noted a conservative treatment regime; medical records which reveal that pain medication and injections had been somewhat successful in relieving pain; and a significant amount of daily activity, including working part-time, all of which were inconsistent with Plaintiff's complaints of disabling pain. The court concludes that this assessment of Plaintiff's credibility was not patently wrong.

**Issue 2:    Whether the ALJ failed to properly account for acid reflux and headaches.**

Next, Plaintiff argues that the ALJ erred in failing to assess the limitations due to Plaintiff's acid reflux and headaches. However, the ALJ did explicitly mention both of these alleged impairments. He noted that nurse practitioner Rodgers treated Plaintiff for these impairments, that Rodgers opined that Plaintiff was not disabled, that Plaintiff had never been treated in the emergency room for either stomach pain or headaches, and that these impairments appeared to be adequately medically managed. (R. 21). This determination is supported by substantial evidence. The court specifically notes that Plaintiff underwent a consultative exam with Dr. Gardner, and there was not even a mention of acid reflux or headaches. (R. 224-26). Additionally, records from Dr.

Laitinen in 2007 revealed no past history of GERD. (R. 289-90). Given this evidence, and the lack of evidence presented by Plaintiff that demonstrates additional limitations due to acid reflux or headaches, the ALJ's decision is affirmed.

**Issue 3:     Whether the ALJ's assessment of Plaintiff's RFC was proper.**

Finally, Plaintiff argues that the RFC the ALJ assigned to Plaintiff for sedentary work was overstated. However, the ALJ's RFC assessment is well supported by objective medical evidence. State agency physicians examined Plaintiff's medical records and determined that Plaintiff retained the RFC for *medium* work. (R. 228-35, 263). Additionally, nurse practitioner Rodgers opined in October 2006 that Plaintiff was not under a disability. (R. 264). And, doctors who evaluated Plaintiff (most notably an August 2006 evaluation by Dr. Gardner (R. 224-26) and a February 2008 exam by Dr. Guarnaschelli (R. 301-02)) routinely found essentially normal results.

Plaintiff points to a February 2006 form completed by Dr. Sivamohan in which he indicated that Plaintiff was unable to sit, stand, walk, lift, or grasp for more than 20 minutes at a time and that Plaintiff was able to work 20-25 hours per week. (R. 201). However, the ALJ was not obligated to adopt this assessment, as Dr. Sivamohan's opinion is not supported by objective medical evidence and is contradicted by other substantial objective medical evidence in the record. Given the substantial evidence in the record to support the RFC for sedentary work, the court concludes that the ALJ's decision must be affirmed.

## VII.  Conclusion

The ALJ's decision is supported by substantial evidence.  The ALJ conducted a thorough credibility determination that was not patently wrong.  Additionally, the ALJ reasonably considered Plaintiff's complaints of acid reflux and headaches.  Finally, the ALJ's RFC assessment is also supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

**SO ORDERED** this 10th day of November, 2010.

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Steven K. Robison
MONTGOMERY ELSNER & PARDIECK
srobison@meplegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov